24 F.3d 958
 29 Fed.R.Serv.3d 312
 ATLANTIC MUTUAL INSURANCE COMPANY and Tacoma Boatbuilding
Company, Inc., Plaintiffs-Appellees,
v.
NORTHWEST AIRLINES, INC., Defendant-Appellee.
Coordination Council for North American Affairs, Intervenor-Appellant.
 No. 93-2877.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1994.
Decided May 18, 1994.
 
 Thomas J. Lonzo, Milwaukee, WI, for plaintiffs-appellees.
 Steven B. Belgrade (argued), John A. O'Donnell, Belgrade & O'Donnell, Chicago, IL, and Ellis R. Herbon, and Geoffrey M. Herbon, Herbon, McLaughlin & Herbon, Milwaukee, WI, for defendant-appellee.
 David C. Keating (argued), Gerald S. Walsh, Walsh & Keating; Samuel Becker, Milwaukee, WI, and Thomas G. Corcoran, Berliner, Corcoran & Rowe, Washington, DC, for intervenor-appellant.
 Before CUDAHY, EASTERBROOK, and ROVNER, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Is Taiwan a province of the People's Republic of China? The district court answered "yes" in the course of deciding not to remand a case Northwest Airlines had removed to federal court. Cargo was damaged en route from Milwaukee to Taipei. If the Warsaw Convention, 49 U.S.C.App. Sec. 1502 note, applies, there is federal jurisdiction, otherwise not. The district court concluded that, as a part of the People's Republic, Taiwan necessarily subscribes to the Warsaw Convention, and it denied the motion to remand. 796 F.Supp. 1188 (E.D.Wis.1992). Ten months later the parties settled their dispute, and the case was dismissed.
 
 
 2
 Two days after the action died, the Coordination Council for North American Affairs attempted to resuscitate it. The Council represents the interests of Taiwan (the Republic of China) in the United States following the end of diplomatic relations that accompanied the United States' recognition of the People's Republic of China. The Council sought to intervene in order to ask the district judge to change his mind about the status of Taiwan. Pointing to the Taiwan Relations Act, 22 U.S.C. Secs. 3301-09, the Council contended that international agreements between the United States and Taiwan were frozen as of December 31, 1978, unless specifically altered, see Sec. 3303(c), and that on that date Taiwan was not a signatory to the Warsaw Convention. (It still isn't, and, unless it is bound by the action of the People's Republic of China, or a decision of the Kuomintang government of China in 1928, while Taiwan was governed by Japan, it never has been.) The district court denied the motion as untimely, and the Council has appealed.
 
 
 3
 An arcane jurisdictional problem complicates this esoteric case. After the district judge ruled that the Warsaw Convention applies, the litigants agreed that further proceedings would take place before a magistrate judge, who would have the power to enter a final judgment. 28 U.S.C. Sec. 636(c). After dismissing the case in the wake of the parties' settlement, the magistrate judge denied the Council's petition to intervene. Final decision by a magistrate judge, followed by appeal to the court of appeals, depends on the written consent of all parties--including those who intervene after other parties have consented and the magistrate judge has assumed control. Jaliwala v. United States, 945 F.2d 221 (7th Cir.1991). The Council did not consent to final (or any) decision by a magistrate judge, and the question therefore arises whether we have jurisdiction. Unlike the intervenor in Jaliwala, however, the Council is only a would-be intervenor. It never acquired the status of a party, and Sec. 636(c)(1) requires consent only by the "parties". Until it became a party, the Council had no statutory entitlement to exercise choice over the type of adjudicator.
 
 
 4
 One might respond that every federal litigant is presumptively entitled to decision by a judge with the tenure and salary protections in Article III of the Constitution. Entry of final decision by a magistrate judge depends on the parties' consent. See Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037 (7th Cir.1984). Entry of a final decision by a federal judge lacking tenure of office during good behavior, without the consent of the person adversely affected by that decision, is difficult to justify under either statute or Constitution. The magistrate judge therefore would have been well advised to seek the Council's consent or refer the Council's petition to the district judge for decision.
 
 
 5
 Whether Article III or the statute entitles the Council to a decision by a district judge is not, however, the question we confront. The Council does not protest the magistrate judge's role and has forfeited any argument based on Article III. Our only question is whether we have appellate jurisdiction, which depends on the satisfaction of the formal elements under Sec. 636(c)(1). To this question the answer must be yes. All of the parties consented to decision by a magistrate judge. The Council wanted to become a party but failed in that quest. The case therefore remained before the magistrate judge, whose decision may be appealed to us under Sec. 636(c)(3).
 
 
 6
 Permissive intervention into a case that had been dismissed would be improvident here, so the only question deserving attention is whether the Council is entitled to intervene as of right under Fed.R.Civ.P. 24(a), which provides:
 
 
 7
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 8
 The district court held that the Council's request was not "timely." We may assume that settlement of litigation by the original parties is not conclusive if a third party possessing an interest in "the property or transaction which is the subject of the action" has been excluded from the negotiations. Intervention permits such an entity to prevent the original litigants from bargaining away its interests. If they beat the intervenor to the punch, the court may annul the settlement in order to give all interested persons adequate opportunity to participate in the negotiations and proceedings. Fleming v. Citizens for Albemarle, Inc., 577 F.2d 236 (4th Cir.1978); McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir.1970); Hurd v. Illinois Bell Telephone Co., 234 F.2d 942, 944 (7th Cir.1956); Cuthill v. Ortman-Miller Machine Co., 216 F.2d 336, 338 (7th Cir.1954).
 
 
 9
 Still, a would-be intervenor must act with dispatch, NAACP v. New York, 413 U.S. 345, 365-67, 93 S.Ct. 2591, 2602-04, 37 L.Ed.2d 648 (1973), and the Council did not. The suit was filed on March 27, 1992, and removed on May 1, 1992. Judge Gordon denied the motion to remand on August 5, 1992, and filed an opinion. The text of that opinion was available on electronic services within a few days and appeared in the printed reports within three months. The Council says that it did not acquire actual knowledge of the opinion until March 7, 1993, when a newspaper report about the case came to its attention. The case was dismissed by stipulation on June 8, and the Council sought to intervene on June 10--more than three months after learning of the decision. This is not timely by any standard. Indeed, even a motion filed on March 7 would not have been timely. By then the litigation was almost over.
 
 
 10
 Until the district judge issued his opinion, the Council could not have known that this otherwise-mundane case included an issue affecting international relations. Once the opinion was on file, however, anyone concerned about Taiwan's status could have discovered its significance at the press of a button. Charged with protecting the interests of Taiwan in the United States, the Council could have tracked down suits affecting its principal. Its lawyers could have searched the electronic databases for the word "Taiwan" and found litigation of interest. Indeed, services such as Lexis and Westlaw automate such inquiries. An interested person may register the desired search, which the service will run on a schedule and transmit the results to the customer's computer or printer. Instead of taking such a precaution, common among institutional litigants, the Council learned about this case by accident. Timeliness is a relative rather than an absolute standard; judges do not expect property owners to search the legal databases for cases affecting their parcels but instead require litigants to notify other potential claimants. Cf. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). Would-be litigants who want to protect far-flung and abstract interests cannot wait for notice, however, but must take prudent steps to acquire knowledge. Leaving things to chance means accepting the risk that news will arrive late, and this is exactly what happened. The Council's petition was not timely.
 
 
 11
 There is a deeper problem; the Council would have had no right to intervene even if it had acted the day after the district judge issued his opinion. Only a person who "claims an interest relating to the property or transaction which is the subject of the action" may intervene under Rule 24(a). The "property or transaction" at stake here is a consignment damaged in transit. The Council disclaims any interest in that cargo and the amount Northwest Airlines owes for the injury. All the Council cares about is the content of the district judge's opinion. But opinions are byproducts rather than the stakes of the contest. See Hewitt v. Helms, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); Alliance to End Repression v. Chicago, 820 F.2d 873 (7th Cir.1987). A litigant dissatisfied with the analysis of an opinion, but not aggrieved by the judgment, may not appeal. Abbs v. Sullivan, 963 F.2d 918, 924 (7th Cir.1992). For the same reason, a judge's rationale is not the "property or transaction" for purposes of intervention. Bethune Plaza, Inc. v. Lumpkin, 863 F.2d 525, 530-34 (7th Cir.1988). Indeed, a debate about language of an opinion is not even a case or controversy within the scope of Article III.
 
 
 12
 Persons who care about the legal principles that apply to a dispute may appear as amici curiae; they are not entitled to intervene. Nothing the district judge wrote will bind Taiwan, and although Judge Gordon's reasoning may persuade other tribunals, the same could be said about views published in a law review. Opinions of district courts carry (for non-parties) no more weight than the power of their reasoning earns them. United States v. Glaser, 14 F.3d 1213, 1216 (7th Cir.1994); Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir.1987). Discussion and debate continue unimpeded, and the Council therefore must take its disagreement with Judge Gordon's opinion to the forums where other disputes lie in the balance. Out of an excess of caution we add: Readers of this opinion should not seek to divine our views about the status of Taiwan and the meaning of the Taiwan Relations Act, for we have none. The subject is open to decision in a case where it matters to the outcome. This case was settled last year and remains closed.
 
 
 13
 AFFIRMED.